Filed 2/26/16  Marriage of Mussallem CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of LINDA and NEIL MUSSALLEM. | H039860<br>(Santa Clara County<br>Super. Ct. No. 1-09-FL150138) |
| LINDA MUSSALLEM,<br><br>     Respondent,<br><br>       v.<br><br>NEIL MUSSALLEM,<br><br>     Appellant. | |

This case arises from the dissolution of the marriage of Neil Mussallem (Neil) and Linda Mussallem (Linda).  During the dissolution proceedings, the parties disputed the characterization and value of real property known as the "Redwood Retreat Ranch" in Gilroy.

Neil appeals an order of the trial court awarding his ex-wife, Linda, a 47 percent separate property share in Redwood Retreat Ranch.  The court determined the value of the property at the time Linda transferred it from her name alone to Neil and herself in 2005 to be $5,435,000.

Neil argues on appeal that the trial court erred because it failed to award the community either a pro tanto interest in the increased value of the property created by the

improvements that were paid for with community funds, or reimbursement to the community for the cost of the improvements.[1]

STATEMENT OF THE FACTS

Neil and Linda were married on October 6, 1971, and separated on September 19, 2008. A judgment of status only was entered on October 10, 2012, and a bench trial ensued to resolve disputed issues regarding the couple's home.

On February 3, 1972, 156.58 acres of real property located at 5355 Redwood Retreat Road in Gilroy were purchased for $275,000 with a $75,000 down payment that was Linda's separate property, and a promissory note to the sellers in the amount of $200,000 with interest, to be paid off in 10 years. The first payment of $20,000 on the promissory note was made with Linda's separate property funds.

The improvements to the property that existed at the time of purchase in 1972 were a two-bedroom, one-bathroom house, a barn and some wooden corrals. The property also contained a roadway to the house.

In 1973, an additional parcel next to 5355 Redwood Retread Road was purchased for $63,000 with Linda's separate funds. Both properties were purchased by Linda's trust, and were subsequently transferred into her name alone. The two parcels collectively are the "Redwood Retreat Ranch," and remained in Linda's name alone until November 11, 2005, when they were transferred to Linda and Neil.

Shortly after the purchase of the property, the couple began to make improvements, including constructing a 6,000 square foot house, four garages, a swimming pool, and tennis and basketball courts.

The parties remodeled the 6,000 square foot house a number of times throughout the years leading up to their dissolution. In the early 1990's, the house was remodeled

---

[1] Linda filed a motion to strike portions of Neil's reply brief that we deferred for consideration with the appeal. The motion is denied.

2

from seven bedrooms, eight bathrooms to three bedrooms, the kitchen, pantry and breakfast room were changed to one large room, and the living room, dining room and den was made into a great room. The house was remodeled again in the 2000's.

The parties presented a number of experts to testify about the value of the property. Linda called real estate appraiser Neil Lefmann, who testified that the property consisted of four separate parcels of property. Mr. Lefmann provided his opinion of the value of the property under different factual scenarios. Mr. Lefmann opined that the value of the land alone in January 1, 2006 was $4,000,000, but that the value of the land as of the date of trial on November 7, 2012 had declined to $3,280,000. He stated that he believed the value of the land with improvements that existed in 1982, assuming them to be in good condition in 2006 was $6,000,000, but that as of trial, the value of the land with the 1982 improvements was $4,900,000. Mr. Lefmann further opined that as of 2006, the land with its current improvements was worth $6,175,000, but that as of the date of trial, the value was $5,040,000. Mr. Lefmann believed that the land itself held most of the value, and that the improvements added little additional value to the property.

Real estate appraiser Wayne Prescott also testified to the value of the property. Unlike Mr. Lefmann, Mr. Prescott testified that the property consisted of five separate parcels. He determined the value of the property by separately valuing each of the parcels. Mr. Prescott valued the property under the same date restrictions and factual scenarios considered by Mr. Lefmann, and testified that the value of this type of real property has decreased substantially since 2006. Like Mr. Lefmann, Mr. Prescott also opined that the improvements added little additional value to the property.

Neil called local real estate agent, Linda Pond, who testified that under market conditions as of the date of trial, she would list the property with the improvements for just under $5,000,000.

Neil also called Dan Dowling, a licensed general contractor to testify about the cost of constructing the improvements to the property. Mr. Dowling opined on the cost to construct the improvements as of the date of trial in 2012. Mr. Dowling did not testify about the actual costs of the improvements when they were made, nor was he qualified to testify about the value the improvements added to the property.

The court found that as of the date the property was transferred from Linda's name alone to Linda and Neil on November 11, 2005, the property was valued at $5,435,000 without improvements.

The court found that "Linda sufficiently traced $75,000 to the purchase of the Redwood Retreat, $63,000 for the 1973 parcel purchase and $20,000 for the second installment of the [promissory] note." The court found that the remaining $180,000 owed on the promissory note was paid with community funds. Based on a finding of a total purchase price of $338,000, the court determined that Linda's separate property share in Redwood Retreat was 47 percent.

The court found that as of the date of trial in 2012, Redwood Retreat Ranch with improvements had decreased in value from the date of transmutation, and was worth $5,000,000. This value was subject to Linda's Family Code section 2640 reimbursement right of 47 percent in the amount of $2,554,450. The remaining community property interest in the property was deemed by the court to be $2,445,550.

The court's findings regarding the property were incorporated into a judgment of dissolution that was filed on April 29, 2013. Neil brought this appeal.

## DISCUSSION

Neil asserts that the trial court erred in setting a value for Redwood Retreat Ranch. Specifically, Neil argues that the court did not adequately account for the increased value the improvements added to the land value. He argues that although the community paid

4

for the improvements, the community did not received a pro tanto interest in the value of the improvements, nor was the community reimbursed for the costs of the improvements.

We review the trial court's characterization of the parties' property interests to Redwood Retreat Ranch under the standard of review set forth by this court in *Bono v. Clark* (2003) 103 Cal.App.4th 1409 (*Bono*).  In *Bono,* we held that " '[q]uestions of fact concern the establishment of historical or physical facts; their resolution is reviewed under the substantial-evidence test.' " (*Id*. at p. 1421.)  Therefore, a " 'trial court's finding that a particular item is separate or community property is limited to a determination of whether any substantial evidence supports the finding.' " (*Ibid*.)  On the other hand, questions of law are subject to our independent review.  (*Ibid*.)  "In this case, we apply the substantial evidence standard to the trial court's factual findings as to the existence and character of the parties' property.  By contrast, the trial court's determination of what legal principles apply is subject to our de novo review." (*Ibid*.)

The issue on appeal in this case is the community's interest in the improvements made to the property.  With regard to the improvements to the property, the court found the following:  "During the time the property was in Linda's sole name, substantial improvements were made to the property but, not all of the improvements enhanced the value of the ranch and some were simply remodels of what had been done before.  Linda could not prove that any of the improvements were paid with her separate property and therefore the improvements are presumed to have been made from community sources.  Most, if not all of the improvements were made by Neil and he ran the expenses through his company and paid no contractor's overhead.  In addition, these funds were pre-tax funds.  Thus, the expenses, if they could be confirmed and totaled, would be far less than costs for such improvements would otherwise have been if a third party made the improvements.  Further, Neil's estimates of the costs are self-serving and not believable.  Neil could not offer any extrinsic evidence as to the actual costs and his expert's (Mr.

5

Dowling) opinion as to the cost of the improvements was unpersuasive because a significant amount of the improvements were done before Mr. Dowling ever became a contractor. Further, Mr. Dowling could not tell which, if any of the improvements enhanced the value of the property and his estimate of costs were based on a contractor's costs and not a person who wrote off the costs through his business. [¶] Linda's separate property interest in Redwood Retreat Ranch as of the date of trial is limited to her Family Code §2640 rights. The Redwood Retreat Ranch was Linda's separate property until November 11, 2005. Neil did not rebut the presumption of Family Code §803(a). Her separate property interest should be quantified as close to November 11, 2005 as possible. The community is entitled to a pro tanto interest in the property as of that date for community funds expended in acquisition and improvement to the property that enhanced the value of the property. [¶] Based on the reports, schedules, and testimony submitted by both parties' real estate experts, the Court finds that most of the value of Redwood Retreat is in the land and that this is an appropriate case to value the land separately from the improvements as contemplated in *Bono v. Clark* (2002) 103 Cal App.4th 1409. Linda's experts offered opinions of the value of the land separate from the improvements. Neil's expert's opinion of value was based on the land plus improvements. The Court finds that on or about November 11, 2005, the value of Redwood Retreat's land, without improvements, was $5,435,000.[2] The total purchase price for the land was $338,000 and the community is presumed to have paid $180,000 of that which is 53%. Linda's separate share is 47% or $2,554,450.3. [¶] Based on the reports, schedules, and testimony submitted by both parties' experts, the Court finds that at the date of trial the value of Redwood Retreat Ranch including improvements is

---

**2** The court relied on the opinion of Linda's expert, Mr. Prescott in arriving at the valuation. The court deemed Mr. Lefman's valuation of $4,000,000 unpersuasive, because it was based on the faulty premise that the ranch consists of only four parcels, when, in fact, it is five.

6

$5,000,000. This value is subject to Linda's Family Code §2640 claim in the amount of $2,554,450 and Redwood Retreat Ranch plus improvements shall be confirmed to Linda at the community value of $2,445,550."

Neil argues at length that the trial court did not order a pro tanto interest in the value of the improvements of the property, nor did the court order the community be reimbursed for the costs of the improvements, and thus, did not follow the provisions of *Bono*, *supra*, 103 Cal.App.4th 1409.

In *Bono*, this court considered the circumstance when community funds are used to improve a separate property residence. There, a single man owned a parcel of real property containing a trailer before he was married. (*Bono*, *supra*, 103 Cal.App.4th at pp. 1414-1415.) After the marriage, he and his wife lived in the trailer for 17 years, and at some point during their marriage, the couple used community funds to improve the trailer. (*Id.* at p. 1426.) The couple separated and before a judgment could be entered in their dissolution proceedings, the husband died. (*Id.* at p. 1415.) The wife sued his estate, seeking a declaration regarding the community interest in the trailer. (*Id.* at p. 1426.) This court concluded that because improvements constitute an investment in the property akin to the expenditure of funds to acquire the property or to pay off a loan used to buy the property, the use of community funds to improve the property entitles the community to a share of the property's appreciation due to the improvements. (*Id.* at p. 1427.) Accordingly, when community funds are invested in improvements, the community property share is " ' "the ratio of the community investment to the total separate and community investment in the property," ' " including the original purchase price *and* the cost of the improvements. (*Id.* at pp. 1427-1428 & fn. 2, quoting *In re Marriage of Moore* (1980) 28 Cal.3d 366, 372.) However, this court cautioned that in determining this ratio, "care must be taken to include only capital improvements, and

7

then only to the extent that those capital improvements enhance the property's value." (*Bono, supra*, 103 Cal.App.4th at p. 1427.)

In this case, the court followed the directive of *Bono,* and ordered that the community was entitled to a pro tanto interest in the value of Redwood Retreat Ranch because community funds were used to make the improvements to the property. However, based on the evidence at trial the court concluded that the improvements added little to the overall value of the property.

The court's finding of the value of the property was based on its review of the evidence presented at trial, and in particular, the testimony of multiple experts for both parties. The court deemed the testimony of Mr. Prescott as the most reliable expression of the property's value. In doing so, the court specifically discounted that of Mr. Leffman, finding that his testimony was based on a faulty premise.

Mr. Prescott opined that the improvements created little added value, estimating that the property's value in 2006 without improvements was $5,435,000. In addition, Neil's only expert to testify to the land's value was Linda Pond, who stated that at the time of trial in 2012, she would list Redwood Retreat Ranch at a little less than $5,000,000, due to the decline in property values due to the recession. Ms. Pond offered no opinion of the value, if any, that the improvements added to the overall property value.

Neil points to the fact that Linda's expert, Mr. Lefmann, estimated the value of the property in 2006 to be $4,000,000 for the land alone, and $6,175,000 with improvements. He further states "[t]he improvements thus enhanced the property's value by $2,175,000, a more than 50% increase to the value of the raw land." Neil fails to note, however, that the court discounted Mr. Lefmann's opinion as to the value of the property, finding it was based on an incorrect premise.

In addition, Neil argues that the trial court erred by "failing to determine the fair market value of the property on the date the community began funding the

8

improvements." However, Neil offered no evidence at trial of the actual date or dates the improvements were made, or the market value of the property at that time.

The court's conclusion that the value of the property was $5,435,000 in 2006, and $5,000,000 at the time of trial in 2012 is supported by substantial evidence. The court considered all of the evidence presented at trial, and discounted that which it found to be lacking in credibility. As an appellate court, we do not weigh the evidence presented in the trial court, nor do we make a determination of a witness' credibility. Indeed, " ' "[o]ur power begins and ends with a determination as to whether there is *any* substantial evidence to support [the findings] . . . we have no power to judge the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom." [Citations.]' [Citation.]" (*In re Marriage of Schnabel* (1994) 30 Cal.App.4th 747, 752.)

Neil argues that because the trial court "failed to calculate a *pro tanto* interest" for the community, it was required to order that the community be reimbursed for the costs associated with making the improvements to the property.

At trial, Neil attempted to prove the costs of the improvements by calling Mr. Dowling as an expert. However, Mr. Dowling could only offer an estimate of what the construction costs would be in 2012, having not worked on any of the improvements, and having not been a licensed contractor at the time the improvements were made. The trial court deemed Mr. Dowling's testimony unpersuasive.

Neil's own testimony offered no support for his claims regarding the improvements. Neil built the 6,000 square foot house on the Redwood Retreat Ranch through his own construction company in 1972 continuing until 1974. He had no records of the costs associated with building the house, and testified that he destroyed all financial records up until those from 2000.

9

The court deemed Neil's testimony self-serving and not reliable. In addition, the court found that Neil made most of the improvements himself, and ran the expenses through his construction company pre-tax. The court further noted that Neil paid no contractor's overhead on the construction costs, and as a result, the expenses incurred to build the improvements were far less than if Neil had hired an independent contractor to complete the construction. Most importantly, there was no evidence presented at trial of the actual costs incurred to construct the improvements, because Neil destroyed all of his financial records and the records from his construction company from that time.

For the reasons stated above, we find that the trial court's findings regarding Redwood Retreat Ranch are supported by substantial evidence.

## DISPOSITION

The judgment is affirmed.

_____

RUSHING, P.J.

WE CONCUR:

_____

PREMO, J.

_____

MÁRQUEZ, J.

11